UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH CASIAS,

        Plaintiff,

                                         CASE NO. 1:10-CV-781

v.

                                         HON. ROBERT J. JONKER

WAL-MART STORES, INC., and
TROY ESTILL,

        Defendants.

_____/


## OPINION AND ORDER

Plaintiff Joseph Casias used to work as an at-will employee for a Wal-Mart store in Battle Creek, Michigan.  The company fired him under its drug use policy after he tested positive for marijuana.  Mr. Casias sued Wal-Mart Stores East, L.P.[1] in state court for wrongful discharge, claiming that Wal-Mart's application of its drug use policy to him violated the Michigan Medical Marihuana Act ("MMMA").[2]  Plaintiff joined Troy Estill, the individual store manager, as a defendant in the case.  Defendant Estill, like Plaintiff Casias, is a Michigan resident, and if Defendant Estill is a proper defendant, there is no diversity jurisdiction here.  The defendants removed the matter to this Court and claim Defendant Estill needs to be disregarded in the diversity

_____

[1] The parties stipulate that the properly named company defendant in this action is Wal-Mart Stores East, L.P.  (Docket # 35.)  The Court will refer to this defendant throughout the opinion simply as Wal-Mart.

[2] The Court uses the more common spelling of marijuana, although the Michigan statute uses a different spelling.

1

calculus. Mr. Casias moves to remand the matter back to the state court. The defendants move to dismiss the case for failure to state a claim. To rule on these motions, the Court must determine whether it has jurisdiction, and if so, whether the MMMA – whatever else it may do – eliminates the normal rule of at-will employment and creates a new protected class for certain marijuana users in Michigan.

## FACTS

Joseph Casias, a resident of Battle Creek, Michigan, worked in a variety of positions at a Wal-Mart store in Battle Creek from 2004 until 2009. (Def. Notice of Removal, Docket # 1, Ex. A2, Complaint ¶¶ 14, 22-23.) Troy Estill, also a citizen of Michigan, managed the store during the period in question. (Docket # 1, Ex. B, Estill Decl. ¶ 5.) Mr. Casias was by all accounts a good employee. Wal-Mart promoted him to inventory control manager after three and a half years and named him "associate of the year" in 2008. (Compl., ¶¶ 2, 23.) The relationship between Wal-Mart and Mr. Casias was that of a normal employer and employee in Michigan. Nothing in the record indicates that Mr. Casias entered into a particular employment contract with Wal-Mart that guaranteed additional protections beyond those provided under Michigan law.

During Mr. Casias's employment, Wal-Mart had a drug use policy for employees. The policy required testing in some situations. Wal-Mart required Mr. Casias to take a drug test when it hired him in 2004, and Mr. Casias passed. (Compl., ¶ 22.) In accordance with its policy, Wal-Mart tested Mr. Casias again in November 2009 after Mr. Casias was injured while at work. (*Id*., ¶ 37.) The record indicates that drug testing after a workplace injury was mandatory and not left to the discretion of a particular store manager or supervisor. Consistent with its policy, Wal-Mart tested Mr. Casias for numerous drugs, including but not limited to marijuana. (*Id*., ¶¶ 37-38.) Mr. Casias

2

tested positive for marijuana. (*Id.*, ¶ 40.) One week after Mr. Casias was notified that he tested positive, Mr. Estill informed him that Wal-Mart had terminated his employment. (*Id.*, ¶ 41.) Wal-Mart's corporate office in Arkansas, not Mr. Estill, made the decision to terminate Mr. Casias. (Estill Decl., ¶ 10.) In fact, Wal-Mart employed a specific drug screening department at its corporate headquarters for precisely this type of situation. (*Id.*) Neither Mr. Estill nor any other individual store manager had the authority or the discretion to vary from the decisions made by Wal-Mart's Drug Screening department in Arkansas. (*Id.*)

Mr. Casias admits that he used marijuana for medical purposes beginning in 2009. (Compl., ¶ 34.) Under a state law passed in 2008, the Michigan Medical Marihuana Act ("MMMA" or "the Act"), Mr. Casias qualified for a registry card, which would protect his use of marijuana from certain adverse state actions against conduct that would be illegal in Michigan but for the registry card. (*Id.*, ¶ 33.) Mr. Casias received his registry card on June 15, 2009, and he began to use marijuana after work. (*Id.*, ¶¶ 33, 35.) When he was drug tested after the accident, he showed the card to the drug-testing staff and his shift manager at Wal-Mart. (*Id.*, ¶¶ 37-40.) He also told Mr. Estill about it when Mr. Estill informed him of Wal-Mart's termination decision, but Mr. Estill informed Mr. Casias that Wal-Mart's drug use policy has no exception for the MMMA. (*Id.*, ¶ 41.)

Mr. Casias filed a complaint in Calhoun County Circuit Court on June 29, 2010, alleging wrongful discharge in violation of public policy and a violation of the MMMA against Wal-Mart and Mr. Estill. The defendants removed the action to this Court (docket # 1). Before the Court are two motions: Mr. Casias's motion to remand to state court for lack of diversity jurisdiction (docket # 9) and the defendants' motion to dismiss (docket # 16). The defendants responded to Mr. Casias's motion to remand (docket # 15) and Mr. Casias replied (docket # 23). Mr. Casias also responded

3

to the defendants' motion to dismiss (docket # 25) and the defendants replied (docket # 28).  The

Court heard oral argument on the motions on November 12, 2010.

## DISCUSSION

### I.    Mr. Casias's Motion to Remand

Defendants removed this action from state court based on diversity jurisdiction under 28

U.S.C. §§ 1332, 1441(a).  Yet Defendant Estill, like Plaintiff, is a Michigan citizen.  This would

normally defeat subject matter jurisdiction and also preclude removal under the forum defendant

rule.  *See* 28 U.S.C. § 1332(a)(1) (the action must be between citizens of different states); 28 U.S.C.

§ 1441(b) (actions based on diversity jurisdiction may be removed only if none of the properly joined

and served defendants is a citizen of the state in which the action was brought).  To overcome these

hurdles, Defendants rely on the theory that Plaintiff fraudulently joined Mr. Estill to defeat the

Court's jurisdiction.  "Fraudulent joinder" is a term of art in federal jurisdictional analysis and does

not require any sort of intentional wrongdoing or deceitful intentions.  It is simply legal shorthand

for deciding whether a particular party's citizenship should be disregarded in assessing subject matter

jurisdiction.

### A.    Legal Principles of Removal, Fraudulent Joinder and Remand

As the removing party, the defendants bear the burden of proving the Court's subject matter

jurisdiction.  *See Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948-49 (6th Cir. 1994); 14B

Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, Federal Practice and

Procedure § 3721 (4th ed. 2009).  The Court has diversity jurisdiction over the matter only when all

opposing parties are completely diverse and the amount in controversy exceeds $75,000.00.  28

U.S.C. § 1332(a).  Here, the parties agree that the amount in controversy prong is satisfied, that

4

Mr. Casias and Wal-Mart are diverse, and that Wal-Mart is not a Michigan citizen.  Accordingly, removal was proper and this Court has subject matter jurisdiction if the only proper parties are Mr. Casias and Wal-Mart.  Defendant Estill, however, is a Michigan citizen, and if he is a proper defendant, then this Court does not have subject matter jurisdiction, and removal was improper.  The question, then, is whether Defendant Estill is fraudulently joined to destroy the Court's diversity jurisdiction.

"The removing party bears the burden of demonstrating fraudulent joinder." *Alexander*, 13 F.3d at 949.  The defendants' burden is heavy, since the fraudulent joinder standard is "even more favorable to plaintiffs than the standard for ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Wolf v. Bankers Life & Cas. Co.*, 519 F. Supp. 2d 674, 683 (W.D. Mich. 2007) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)).  "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (1999).  Unless it is clear that "there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law," fraudulent joinder does not apply.  *Alexander*, 13 F.3d at 949.  Moreover, all disputed questions of fact and ambiguities in the controlling state law must be resolved in favor of the non-removing party.  *Coyne*, 183 F.3d at 493; *Alexander*, 13 F.3d at 949.  Finally, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Boladian v. UMG Recordings, Inc.*, 123 Fed. Appx. 165, 168 (6th Cir. 2005).

When the district court's subject matter jurisdiction is in dispute on a Rule 12 motion, the court may consider evidence outside of the complaint.  *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1087, n. 11 (6th Cir. 2010) ("When a district court's subject matter jurisdiction is in question, it is

empowered to review extra-complaint evidence and resolve factual disputes."); *see also* Wright, Miller, Cooper & Steinman, <u>supra</u>, § 3723. When a party makes an allegation of fraudulent joinder, the court may be required to "pierce the pleadings" and consider summary-judgment type evidence, including affidavits and declarations. *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964); *Miller v. PPG Indus., Inc.*, 237 F. Supp. 2d 756, 759, n. 5 (W.D. Ky. 2002). All parties have had the opportunity to submit evidence under this rule, and Defendants submitted a declaration from Defendant Estill. The declaration states that Mr. Estill did not make or recommend the decision to terminate Mr. Casias but was instead directed by Wal-Mart's corporate office to do so. (Estill Decl., ¶ 10.) Mr. Casias has not challenged or rebutted the affidavit.

The standard for demonstrating fraudulent joinder is demanding, but Defendants have satisfied it here.

### B. Joseph Casias Cannot Establish a Cause of Action Against Troy Estill

The MMMA prohibits denial "of any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau" for marijuana use in compliance with the act. M.C.L. § 333.26424(a). Mr. Casias claims this provision creates a new public policy in the State of Michigan that prohibits a private employer from taking disciplinary action against an employee based on conduct protected – or at least arguably protected[3] – from criminal prosecution under the MMMA. The Court assumes, for purposes of the

---

[3] Michigan courts have not clearly defined the scope of the MMMA's protections and have in fact warned Michigan citizens about using marijuana under this Act. *See People v. Redden*, – N.W.2d –, 2010 WL 3611716 (Mich. App., Sept. 14, 2010) (O'Connell, P.J., concurring) ("Until [the Michigan] Supreme Court and the Legislature clarify and define the scope of the MMMA, it is important to proceed cautiously when seeking to take advantage of the protections in it. Those citizens who proceed without due caution will become test cases and may lose both their property and their liberty.").

remand motion only, that Mr. Casias's termination was wrongful under some cause of action and that a private business may be liable in damages.  Even with these assumptions in place, the Court must still determine whether Mr. Estill could possibly be held personally liable under the circumstances presented in this case.

Under Michigan law, "corporate officials may be held personally liable for their individual tortious acts done in the course of business, regardless of whether they were acting for their personal benefit or for the corporation's benefit."  *Dep't of Agric. v. Appletree Marketing, LLC*, 485 Mich. 1, 17 (2010).  This principle has been applied to a variety of tortious behavior.  *See, e.g., Elezovic v. Bennett*, 274 Mich. App. 1, 14 (2007) (sexual harassment claim brought under the Elliott Larsen Civil Rights Act); *Att'y Gen. v. Ankersen*, 148 Mich. App. 524, 557-58 (1986) (nuisance); *Allen v. Morris Bldg. Co.*, 360 Mich. 214, 217 (1960) (willful change in natural flowage of water); *Bush v. Hayes*, 286 Mich. 546, 549-50 (1938) (conversion).  Michigan courts have refrained from applying personal liability to all wrongful conduct of corporate officials, however.  *See, e.g., Reed v. Michigan Metro Girl Scout Council*, 201 Mich. App. 10, 13 (1993) ("It is now settled law that corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with no benefit to the corporation.").  No court has yet ruled that the potential reach of the MMMA is wide enough to apply to corporate officials individually.  Indeed, the statute by its terms does not even address potential civil liability for anyone, and does not create a private cause of action against anyone.[4]  The focus of the statute is exclusively on staying the hand of state power,

---

[4] As explained later in this opinion, neither the text nor purpose of the MMMA affords Mr. Casias the protection he seeks.  Mr. Casias's interpretation extracts the word "business" from its statutory context and uses that single word as a mantra that opens the door to regulation of all private employment decisions in the state.  Even assuming the MMMA went this far – and it does not – it would still not impose individual liability upon managers such as Mr. Estill.  The MMMA

not private action of any kind, all as more fully explained later in this opinion. All that said, these weaknesses in the potential claim against Defendant Estill personally may not, standing alone, be enough to establish fraudulent joinder. They may simply demonstrate that Mr. Casias's likelihood of success against Defendant Estill is remote, not beyond all plausibility, at least under a brand new statute.

But this is not all, and what is left is enough to establish fraudulent joinder. Even assuming that personal liability for a corporate official could theoretically attach under the MMMA-wrongful termination context, the law would still require some level of involvement in the wrongful activity for individual liability to apply in Michigan. *See, e.g., Freeman v. Unisys Corp.*, 870 F. Supp. 169, 173 (E.D. Mich. 1994) ("merely informational input by an employee or supervisor does not make them an agent of an employer that qualifies them for liability"); *Yanakeff v. Signature XV*, 822 F. Supp. 1264, 1266 (E.D. Mich. 1993) (defendant "had no control over the decision to terminate plaintiff"; rather, "her input was merely informational"); *Champion v. Nationwide Security, Inc.*, 205 Mich. App. 263, 266 (1994), *rev'd on other grounds*, 450 Mich. 702 (1996) (noting that defendant must have "significant control" over "hiring, firing, promoting, or disciplining to be considered an agent") (citing *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 186 (6th Cir. 1992)); *Urbanski v. Sears Roebuck & Co.*, 2000 WL 33421411, *3 (Mich. App. 2000) ("Although a supervisor need not have complete authority over hiring, firing, promoting or disciplining to be considered an agent, the supervisor must have 'significant control' of those duties."). Michigan courts have rejected the idea

---

does not define "business." *See* M.C.L. § 333.26423 (list of definitions). In contrast, Michigan's Elliott Larsen Civil Rights Act ("ELCRA"), which prohibits an "employer" from engaging in employment discrimination, *see* M.C.L. § 37.2202(a), carefully defines the term to include an employer's agent. M.C.L. § 37.2201(a). The drafters of the MMMA did no such thing in their use of the term "business" or "employer."

8

that any participation, however slight, is sufficient to expose an individual to personal liability for a corporation's wrongful conduct. *See, e.g., Bush v. Hayes*, 286 Mich. at 549 (describing the employee as an "active participant"); *Allen v. Morris Bldg. Co.*, 360 Mich. at 217 (employee was "in control" of corporation's activities and personally supervised its operations). Mr. Casias cannot possibly meet this standard on the claim against Defendant Estill.

Here, Mr. Casias's challenge is to Wal-Mart's corporate policy, not to any decision applying the policy by Defendant Estill. All Mr. Estill did is communicate the corporation's policy decision to Mr. Casias. Defendant Estill was simply an information conduit. The decision to fire Mr. Casias was actually made by Wal-Mart's corporate office, specifically the drug screening department, under a corporate-wide policy leaving no room for managerial discretion. Mr. Estill did not have any control, much less significant control, over the employment status of those employees, like Mr. Casias, who used marijuana, or any other prohibited drug under the company policy. Contrary to Mr. Casias's contention, acting solely as a messenger cannot impose liability on a corporate employee. Such a holding would be unprecedented under Michigan law. It would effectively expose the receptionist or secretary who typed the termination letter or delivered the termination message to the theoretical risk of personal liability.

Mr. Casias's complaint is with the corporate-wide policy that mandated his termination in this case. There is no legally colorable basis for a claim against Defendant Estill personally, or against any other individual who served in some capacity as simple messengers of a foreordained company decision under a company-wide policy applicable to the use of prohibited drugs on or off the job. Accordingly, the Court finds that Defendant Estill's citizenship must be disregarded in

assessing diversity. The Court has subject matter jurisdiction, and Plaintiff's motion to remand must be denied.

## II.    Motion to Dismiss

Defendants move to dismiss the matter under Rule 12(b)(6) for failure to state a claim. The defendants argue first that the MMMA is preempted by the federal Controlled Substances Act and the federal Americans with Disabilities Act. Defendants also argue that the MMMA does not create a private right of action in this circumstance and does not confer any employment protections on medical marijuana users. Because the text of the MMMA does not bestow the employment protections Mr. Casias seeks, and because this is dispositive of Mr. Casias's claim, the Court does not reach the issue of the MMMA's preemption by federal statutes. *See Quest Corp. v. City of Santa Fe, New Mexico*, 380 F.3d 1258, 1267 n. 7 (10th Cir. 2004) ("Because federal preemption of a state or local law is premised on the Supremacy Clause of the United States Constitution and because of the longstanding principle that federal courts should avoid reaching constitutional questions if there are other grounds upon which a case can be decided," the Court must determine whether the matter can be decided without turning to federal preemption.); *BellSouth Telecommunications, Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1176 (11th Cir. 2001).

### A.    Motion to Dismiss Standard

To survive the defendants' motion to dismiss under Rule 12(b)(6), Mr. Casias "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal citations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that

10

allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009)).  A court must accept as true all factual allegations, but it need not accept legal conclusions.  *See Iqbal*, 129 S. Ct. at 1949.  "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

### B.     The Michigan Medical Marihuana Act Does Not Regulate Private Employment

Mr. Casias bases his claim for relief on two different theories.  First, Plaintiff argues the MMMA provides him with an implied right of action.  Even Mr. Casias acknowledges his chances on this theory are remote, given the strictness of the current test in Michigan case law.  *See Lash v. City of Traverse City*, 479 Mich. 180, 192-93 (2007) (a private right of action cannot be inferred without evidence of legislative intent).  Under his second theory, Mr. Casias's cause of action stems from the defendant's alleged violation of the public policy of Michigan, as found in the MMMA. *See Suchodolski v. Michigan Consol. Gas Co.*, 412 Mich. 692, 695 (1982) ("some grounds for discharging an employee are so contrary to public policy as to be actionable").  One may reasonably ask whether this theory is anything but an end run on the stringent private cause of action test.  After all, if the alleged public policy at issue is created by statute, and if the statute does not itself create a private cause of action to enforce the policy, where does a court receive the power to create a remedy anyway?  This would seem to do under the rubric of "public policy" exactly what the Michigan Supreme Court prohibits in *Lash*: namely, implying a private cause of action in the absence of legislative intent.  But under either theory – even assuming the *Suchodolski* public policy theory survives – Plaintiff would have to show that the statutory policy at issue applies to this case.

11

Plaintiff cannot possibly do so here, because the MMMA addresses potential adverse action by the state; it does not regulate private employment. Accordingly, his claims must be dismissed.

The foremost goal in statutory interpretation is to give effect to the lawmakers' intent. *See Sun Valley Foods Co. v. Ward*, 460 Mich. 230, 236 (1999). Because the MMMA was an initiated state statute, the Court must analyze the intent of Michigan voters who actually passed the legislation and interpret the statute consistent with that intent. *Potter v. McLeary*, 484 Mich. 397, 410-11 (2009). To do this, a court turns to the language of the statute, *Briggs Tax Service, L.L.C. v. Detroit Public Schools*, 485 Mich. 69, 76 (2010), and "consider[s] both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme." *Sun Valley*, 460 Mich. at 237 (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995) (internal quotation marks omitted)). "[T]he entire act must be read, and the interpretation to be given to a particular word in one section arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole." *Pi-Con, Inc. v. A.J. Anderson Const. Co.*, 435 Mich. 375, 403-04 (1989) (quoting *Grand Rapids v. Crocker*, 219 Mich. 178, 182-83 (1922)).

The fundamental problem with Plaintiff's case is that the MMMA does not regulate private employment. Rather, the Act provides a potential defense to criminal prosecution or other adverse action by *the state*. *See* M.C.L. § 333.26422(b) ("changing state law will have the practical effect of protecting *from arrest* the vast majority of seriously ill people who have a medical need to use marihuana") (emphasis added); *People v. Redden*, – N.W.2d–, 2010 WL 3611716 (Mich. App. Sept. 14, 2010) (Meter, J.) ("The ballot proposal explicitly informed voters that the law would permit registered and unregistered patients to assert medical reasons for using marijuana *as a defense to any prosecution* involving marijuana.") (emphasis added). The MMMA is directed at governmental

12

conduct, and even here the protection is very narrow.  Indeed, the MMMA does not even formally "de-criminalize" the use of medical marijuana; rather, it simply provides an affirmative defense and other similarly limited protections in the face of criminal proceedings.  As the Michigan Court of Appeals recognized in *Redden*, possession and use of marijuana in Michigan – even for medical purposes – is still a crime.  *Id*., 2010 WL 3611716 (O'Connell, P.J., concurring) (noting that the MMMA provides an *affirmative defense*, but does not legalize the use of marijuana).  All the MMMA does is give some people limited protection from prosecution by the state, or from other adverse state action in carefully limited medical marijuana situations.[5]

In contrast to what the MMMA does address – potential state prosecution or other potential adverse state action – the MMMA says nothing about private employment rights.  Nowhere does the MMMA state that the statute regulates private employment, that private employees are protected from disciplinary action should they use medical marijuana, or that private employers must accommodate the use of medical marijuana outside of the workplace.  Under Plaintiff's theory, no private employer in Michigan could take any action against an employee based on an employee's use of medical marijuana.  This would create a new protected employee class in Michigan and mark a radical departure from the general rule of at-will employment in Michigan.  *See Lytle v. Malady*, 458 Mich. 153, 163 (1998) ("Generally, and under Michigan law by presumption, employment

---

[5] The use of marijuana is still a federal felony.  *See* 21 U.S.C. §812; 21 U.S.C. § 841(a)(1); M.C.L. § 333.26422(c) ("federal law currently prohibits any use of marihuana except under very limited circumstances").  Nothing in the state law could, of course, change this.  Accordingly, one implication of Plaintiff's theory is that the MMMA would expose a Michigan employer to civil liability for firing an employee for engaging in conduct that amounts to a federal felony.  Ironically, under Plaintiff's theory, the federal felon would have this special protection, but an employee using a legal drug under prescription would not enjoy the same employment protection.  Nothing in the MMMA or in the exercise of simple common sense supports such a result.

relationships are terminable at the will of either party."). Moreover, the MMMA would also regulate, under the logical conclusion of Plaintiff's theory, tenants in private housing, students at private educational institutions, and other private business actors. Yet the MMMA contains *no language* stating that it repeals the general rule of at-will employment in Michigan or that it otherwise limits the range of allowable private decisions by Michigan businesses. The protections that the Act does provide apply to actions by the *state*: "a person shall not be denied custody or visitation," M.C.L. § 333.26424(c), "a patient . . . may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana," M.C.L. § 333.26428(a), "marihuana . . . that is possessed, owned, or used in connection with the medical use of marihuana . . . shall not be seized or forfeited," M.C.L. § 333.26424(h). In contrast, the Act does not mention regulation of private actors, including private employers.

The textual hinge for Plaintiff's expansive reading of the statute does not bear the weight of Plaintiff's argument. Section 26424(a), the MMMA states:

> A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act . . .

M.C.L. § 333.26424(a). According to Plaintiff, the simple word "business" expands the reach of the MMMA to all private activity taken by a "business," including employment decisions. The word "business" is not defined in the MMMA. *See* M.C.L. § 333.26423 (list of definitions), but it recurs throughout the statute as part of the phrase "business or occupational or professional licensing board or bureau." Mr. Casias relies on the single word "business" in subsection 26424(a) as the only positive textual support for his position that the MMMA shields him from termination. This one

14

word, torn from its overall context, does not do what Mr. Casias wants it to do. The language, structure, and purpose of the MMMA all signify that the statute was not meant to govern private employment decisions like the one at issue here.

A consistent reading of the phrase throughout the MMMA demonstrates that "business" is not meant to stand alone, but instead modifies "licensing board or bureau." Wherever the undefined word "business" appears in the statute, it is as part of the phrase: "civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau." *See, e.g.*, M.C.L. § 333.26424(a). This is thoroughly consistent with the overall structure and purpose of the Act to address potential criminal prosecution or other adverse action by the state. Moreover, the statute itself supports this contextual construction. In subsection 26424(f), the recurring phrase includes a critical clue to the intended meaning of the term:

> A physician shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by the Michigan board of medicine, the Michigan board of osteopathic medicine and surgery, or any *other* business or occupational or professional licensing board or bureau, solely for providing written certifications . . .

M.C.L. § 333.26424(f) (emphasis added). Because "words grouped in a list must be given related meaning," *Griffith v. State Farm Mut. Auto Ins. Co.*, 472 Mich. 521, 533 (2005), "business" in subsection 26424(f) must have a related meaning to other words in the list, namely Michigan board of medicine, Michigan board of osteopathic medicine and surgery, and occupational or professional licensing board or bureau. The added term "*other* business or occupational or professional licensing board or bureau" underscores the point. It is clear from the examples put forth that the statute contemplated discipline from boards and bureaus of the state – whether described as business boards, occupational boards or professional licensing boards – not the entire realm of private employment.

15

In that list, "business" must act as a modifier of "board or bureau," not as an independent entity, for the word to have a related meaning. "Business" must then consistently be used as a modifier throughout the statute, not just in subsection 26424(f).

That the drafters of the MMMA chose to separate the list of modifiers of "licensing board or bureau" by disjunctives rather than a comma does not defeat this common-sense reading of the statute. Using commas and one disjunctive may be the more common method of listing a series, but the drafters were not required to do so. *See* The Chicago Manual of Style ¶ 6.18 (16th ed. 2010) ("In a series whose elements are all joined by conjunctions, no commas are needed unless the elements are long and delimiters would be helpful."). Moreover, limiting "business" to act as a modifier and not a stand-alone term still gives "business" meaning. *See Stevens v. Employer-Teamsters Joint Council No. 84 Pension Fund*, 979 F.3d 444, 452 (6th Cir. 1992) (phrases joined by a disjunctive should be given separate meanings). Local governments in Michigan issue business licenses, which are distinguishable from professional or occupational licenses.[6]

Mr. Casias points to subsection 26427(c)(2) as additional evidence of employment regulation. That section states that nothing in the MMMA requires "[a]n employer to accommodate the ingestion of marihuana in any workplace or any employee working while under the influence of marihuana." M.C.L. § 333.26427(c)(2). This sole mention of employment does not operate as a negative inference, prohibiting private employers from disciplining an employee who uses medical marijuana away from the workplace. "[A] negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."

---

[6] See http://www.grand-rapids.mi.us/index.pl?page_id=5237 for a list of business licenses required in Grand Rapids, Michigan, and http://www.detroitmi.gov/Business/BusinessLicenses.aspx for information on business licenses in Detroit, Michigan.

*Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006).  The language excluded from subsection 26427(c) is not included anywhere else in the statute, since the MMMA never mentions private employers or employees other than in this section.  The Court cannot then draw a negative inference about employment protections when the remainder of the statute is silent on the rights of employees.  Moreover, Michigan voters could not have intended to enact private employment regulation implicitly, through a negative inference, when the rights of employees are never mentioned anywhere else in the statute.[7]

The purpose of the MMMA only confirms that it was not meant to regulate private employment, but rather protect medical marijuana users from state action.  None of the declarations indicate that the act is meant to address employment decisions or discipline.  *See* M.C.L. § 333.26242.  The introductory language on the ballot listed a variety of purposes of the statute, including to "permit registered and unregistered patients and primary caregivers to assert medical reasons for using marijuana as a defense to any prosecution involving marijuana," but it did not state

---

[7] A similar provision in Washington's medical marijuana act received similar treatment.  *See Roe v. Teletech Customer Care Management, LLC*, 152 Wash. App. 388, 398-99 (2009).  The Washington statute states that "[n]othing in this chapter requires any accommodation of any on-site medical use of marijuana in any place of employment . . ."  R.C.W.A. § 69.51A.060(4).  The court stated:

> the average informed lay voter would not read this provision as creating a corollary duty for employers to accommodate an employee's medical use of marijuana *outside* the workplace where MUMA expressly creates no such duty *inside* the workplace. To the contrary, absent the strained construction Roe urges, the provision implies that MUMA will place no requirements on employers or places of employment. Moreover, it is unlikely that voters intended to create such a sweeping change to current employment practices, as Roe suggests, through negative implication, when prior statutes imposing duties on private employers have done so only with explicit language.

*Teletech*, 152 Wash. App. at 398-99.

17

that the MMMA also provided employment protections to medical marijuana users. *See* http://www.procon.org/sourcefiles/Michigan_Ballot_Proposal_2008.pdf. The preamble to the MMMA expresses that it "provide[s] protections for the medical use of marihuana." This statement however, does not imply that medical marijuana users are protected from all possible consequences of their marijuana use. *See People v. Redden*, 2010 WL 3611716 (O'Connell, P.J., concurring) ("The MMMA does not codify a *right* to use marijuana; instead, it merely provides a procedure which seriously ill individuals using marijuana for its palliative effects can be identified and protected from prosecution under state law.") (emphasis in original). The MMMA does not protect anyone from federal prosecution for marijuana, for example. *See* 21 U.S.C. § 812; 21 U.S.C. § 841(a)(1); M.C.L. § 333.26422(c) ("federal law currently prohibits any use of marihuana except under very limited circumstances").

Further, the MMMA does not indicate a general policy on behalf of the State of Michigan to create a special class of civil protections for medical marijuana users. The MMMA contains no "explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty," because the MMMA does not confer any statutory rights. *Suchodolski*, 412 Mich. at 695; *see Redden*, 2010 WL 3611716 (O'Connor, P.J., concurring) ("the MMMA does not create any sort of affirmative *right* under state law to use or possess marijuana") (emphasis in original). Under Mr. Casias's reading of the MMMA, medical marijuana users would enjoy the kind of employment safeguards offered to only a very few groups under Michigan law. *See, e.g.*, M.C.L. § 37.2202(1) ("religion, race, color, national origin, age, sex, height, weight, or marital status"); M.C.L. § 37.1102(1) (disability); M.C.L. § 15.362 (whistle-blowers). The MMMA's reference to "business" does not elevate medical

18

marijuana users to the same status as those groups that receive explicit protection from other Michigan statutes.

Mr. Casias cannot establish that the MMMA contains either a statutory right without a remedy or an implied private cause of action. The text, structure, and purpose of the MMMA belie Plaintiff's claim that the Act regulates private employment.[8] Contrary to Mr. Casias's assertion, the impacts of any private employment regulation in the MMMA would be broadly felt and would extend the statute's protections much further than the MMMA meant to do. If the voters of Michigan meant to enact such sweeping legislation, they had to do so explicitly. Instead, they enacted a statute whose language and purpose simply protects medical marijuana users from prosecution and other similar actions of state and local governments, and does not attempt to regulate private employment decisions.

**CONCLUSION**

The MMMA meant to provide some limited protection for medical marijuana users from state actions, primarily arrest and prosecution. Even the scope of that protection is unclear and limited. *See Redden*, 2010 WL 3611716 (O'Connell, P.J., concurring). Nothing in the language or the purpose of the MMMA indicates an intent of the Michigan voters to regulate private

---

[8] The Court notes that no other medical marijuana statute has been held to regulate private employment. *See, e.g.*, *Roe v. Teletech Customer Care Management LLC*, 152 Wash. App. 388, 396 (2009) ("We hold that by enacting MUMA, the voters did not intend, either explicitly or implicitly, to create a civil cause of action and MUM does not imply a private right of action."); *Johnson v. Columbia Falls Aluminum Co.*, 350 Mont. 562 (2009) ("[T]he MMA does not provide an employee with an express or implied right of action against an employer."); *Ross v. RagingWire Telecommunications, Inc.*, 42 Cal.4th 920 (2008) ("Nothing in the text or history of the Compassionate Use Act suggests the voters intended the measure to address the respective rights and obligations of employers and employees."). Mr. Casias cannot point to any other state statute that protects the private employment of medical marijuana users.

19

employment, and the MMMA does not address private employment directly.  Whatever protection

the MMMA does provide users of medical marijuana, it does not reach to private employment.

Accordingly, Plaintiff's motion to remand (docket # 9) is **DENIED** and Defendants' motion to

dismiss (docket # 16) is **GRANTED**.

       **IT IS SO ORDERED.**


Dated:     February 11, 2011        /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE